# N. Y. COMMON PLEAS.

WALTER M. BROWN agt. KATHERINA W. ZEISS and J. D. KURTZ CROOK, as administrators of the goods, chattels and credits of GEORGE H. ZEISS, deceased, and others.

*Mechanic's lien — When it attaches — Necessary parties to foreclosure — Complaint — Demurrer.*

Plaintiff furnished G. H. Z. certain lumber which he purchased for the purpose of building fences and other structures in his coal yard on Avenue D, in the city of New York. G. H. Z. agreed to pay cash for the lumber, but after all the lumber was furnished and used for the purpose intended, but before it was all paid for, G. H. Z. died, intestate, and the defendants, K. W. Z. and J. D. K. C., were appointed administrators. Thereafter, and before the expiration of thirty days from the time of the furnishing of the lumber, the plaintiff filed a notice of

claim or mechanic's lien, and thereafter commenced an action to fore-
close the same. The defendants demurred to the complaint on the
ground that it did not show a sufficient cause of action, G. H. Z. having
died before the lien was filed :

*Held,* that the lien had attached before the death of the owner, and the
estate subject to the lien, and estate for years, passed to the adminis-
trators of the owner as part of the assets of the intestate. The
administrators are liable for the deficiency, if any there should be, and
the other defendants, who purchased the estate subject to the lien, are
necessary parties to the foreclosure.

*Special Term, February,* 1880.

THE plaintiff furnished the late George H. Zeiss certain
lumber, which said George H. Zeiss purchased for the pur-
pose of building fences and other structures in his coal yard
on Avenue D, in the city of New York. George H. Zeiss,
agreed to pay cash for the lumber, but after all the lumber
was furnished and used for the purpose intended, but before
it was all paid for, Mr. Zeiss died intestate, and the defend-
ants, Katherina W. Zeiss and J. D. Kurtz Crook, were appointed
administrators by the surrogate of the county of Kings.
Thereafter, and before the expiration of thirty days from the
time of the furnishing of the lumber before mentioned, the
plaintiff filed a notice of claim or mechanic's lien in the
clerk's office of the city and county of New York, and there-
after commenced an action to foreclose the same. The
defendants demurred to the complaint on the ground that the
complaint did not show a sufficient cause of action, Mr. Zeiss
having died before the lien was filed.

*John L. Brower,* for plaintiff.

*Bell, Bartlett & Wilson* and *H. W. Hayden,* for defendants.

VAN HOESEN, *J.*— In the case of *Barnes* agt. *Swanson* (4
*Best & S.,* 270) Mr. justice COMPTON said : " When you get
to these acts of parliament the difficulty is immense ; " and
in *Stratton* agt. *Petitt* (16 *C. B.,* 432), Mr. justice MAULE

said, in referring to an act of parliament: "Its absurdities are so great that the framers themselves had no very distinct notion of its meaning." The same observations might with propriety be made respecting the mechanics' lien act of 1875. There have been a number of acts on the subject of mechanics' liens, and there was no reason for leaving the courts to guess at what the legislature meant.

In the statute before me the lien act of 1863 bound the land from the time the work was begun, notwithstanding any sale, transfer or incumbrance made thereafter, but the amendment of 1866 so changed the law that the mechanics acquired a lien upon that interest only which the owner had in the land at the time the mechanics' claim was filed in the office of the county clerk. The act of 1875, drawn long after the statutes of 1863 and 1866, ought to have left no room for doubt as to the extent of the lien; but yet we find section 3 and section 7 open to different constructions, by one of which the land is bound from the beginning of the work, and by the other of which the land will not be bound at all if the owner conveys it before the mechanic files his claim. Section 4 regulates the order of priority of liens. It provides that any mortgage, or any other incumbrance, not recorded, and not known to the mechanic, shall be postponed to the claim of the mechanic; but an incumbrance, if on record at the time the mechanic's claim is filed, shall be a lien on the land superior to the mechanic's lien. The priority of liens, therefore, is determined by the dates at which they become matters of public record. Section 3 provides that if, at the time the work is begun, or the furnishing of materials is begun, the person who causes the structure to be erected owns the fee, the land shall be subject to the lien; but that if such person owns an estate less than the absolute fee simple, then his estate, whatsoever that may be, shall be subject to the lien. "Subject to the lien" means bound by the lien. The land would not be bound by or subject to the lien, if the owner could sell it free from the lien.

Under the act of 1875 a lien does not owe its existence to the filing of the claim. That act does not provide, as did the earlier statutes, that on filing his claim or giving notice the mechanic should have a lien, but it declares that the land, or the estate in the land of the person who causes the work to be done or the materials to be furnished, shall be subject to a lien in favor of the persons doing such work and furnishing such materials.

If the mechanic or the material man fails to perform his contract, so that the land owner owes him nothing, of course there is no lien; but when the contract is performed the right to the lien is complete, though that right may be lost if it be not asserted by the filing of a claim within the period prescribed by statute, and though the land owner cannot be compelled to pay more than the amount which at the time of the filing of the claim he owes the original contractors.

It is true that no very good reason can be perceived for permitting the land owner to mortgage whilst withholding from him the right to sell, and that the mechanic may lose his entire claim if a mortgage or a judgment becomes a matter of record before his claim is filed; but these are matters which address themselves to the legislature and not to the courts. Construing section 3 in connection with section 1, I think the meaning of the legislature was to bind the land so that after the work begins, or the delivery of materials begins, the land owner cannot convey the land free from the inchoate lien. Section 7 is not at first blush in all respects consistent with the construction. It provides that, except as provided in the fourth section, the lien shall attach, to the extent of the liability of the owner to the contractor, to all the right, title and interest which the owner has in the property at the time the lienor files his claim. Section 4, it will be remembered, provides that any lien, mortgage or incumbrance recorded before the claim is filed shall have priority to the mechanic's lien, whilst the language of section 7 is ambiguous. I am inclined to the opinion that the meaning is, as I have before said, that

if an incumbrance of any kind is placed upon record after the work has begun and before the claim is filed, the lien shall attach on such interest only as the owner has in the land at the time of the filing of the claim. To all the right, title and interest which the owner then has "must, it seems to me, mean that if the interest of the owner in the land is diminished by the recording of incumbrances after the work is begun, the lien of the mechanic shall be subordinate to those incumbrances and shall bind only that interest which, after the recording of the incumbrances, remains in the owner." The interest which the owner then has must be the same interest which he had when the work was begun, unless an incumbrance has meantime been recorded. If the land be "subject to the lien" the interest of the owner can only be changed to the extent permitted by the statute; and, as has been already said, that change may be effected by the recording of an incumbrance, but cannot be by the recording or the making of a sale or transfer.

If this be unreasonable or absurd, the fault is with the legislature, not with the courts.

If the foregoing views are correct the demurrer must be overruled. The lien had attached before the death of the owner, and the estate subject to the lien, and estate for years, passed to the administrators of the owner as part of the assets of the intestate. The administrators are liable for the deficiency, if any there should be, and the other defendants who purchased the estate subject to the lien are necessary parties to the foreclosure. The demurrers must be overruled with leave to the defendants to answer on payment of costs.